LUCERO, Circuit Judge,
dissenting:
Because the majority’s decision in this case will unnecessarily and unjustifiably compromise the health and safety of the people who currently live within and immediately downwind from Section 17, I must respectfully dissent. For thirty years, the United Nuclear Corporation (“UNC”) mined Section 17. When it abandoned the mine, it failed to undertake a basic responsibility: cleaning up after itself. UNC left behind mining spoil that continuously emits gamma radiation and radon. Now, the Nuclear Regulatory Commission (“NRC”) has granted a license to Hydro Resources, Inc. (“HRI”) to mine the same property. HRI plans to mine the site, which will result in total radiation levels nine to fifteen times the permitted regulatory limit.
Petitioners in this case include members of three families that live within or near Section 17 and Eastern Navajo Diñé Against Uranium Mining, a Navajo community organization representing members who reside primarily in Church Rock and Crownpoint, New Mexico. These petitioners should be able to rely on the NRC to properly interpret statutes and agency regulations designed to protect the public’s health and safety. Instead, the NRC has abandoned its statutory commitment to refrain from issuing licenses if doing so “would be inimical to ... the health and safety of the public,” 42 U.S.C. § 2099, and has rendered this community vulnerable to the ill effects of dangerous radiation.
My respected colleagues compound the NRC’s error by failing to adequately review the agency’s action. The NRC issued HRI’s license at Section 17 using an interpretation of 10 C.F.R. 1 § 20.1301(a)(1) that is inconsistent with the text of the regulation. We should therefore set aside the NRC’s decision and remand to the agency for decisionmaking consistent with the proper interpretation of the rule — an interpretation that is true to the regulation and that adequately protects the interests of the public and the petitioners in this case. Because the majority’s decision compounds past injustice by committing legal error, I respectfully dissent.
I
In affirming the NRC’s grant of a mining license to HRI, the majority erroneously concludes that we should defer to the NRC’s interpretation of § 20.1301(a)(1). (Majority Op. 687.) The majority notes that when we review an agency’s interpretation of its own regulations under the Administrative Procedure Act (“APA”), 5 U.S.C. § 551 et seq., we must give the agency’s interpretation “controlling weight *706 unless it is plainly erroneous or inconsistent with the regulation.” (Majority Op. 684) (quoting Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965)). In this case, the NRC’s interpx-etation of § 20.1301(a)(1) is “inconsistent with the regulation” and thus warrants no deference. Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994).
Section 20.1301(a)(1) requires that a licensee conduct operations such that:
[t]he total effective dose equivalent to individual members of the public from the licensed operation does not exceed 0.1 rem (1 mSv) in a year, exclusive of the dose contributions from background radiation, from any medical administration the individual has received, from exposure to individuals administered radioactive material and released under § 35.75, from voluntary participation in medical research programs, and from the licensee’s disposal of radioactive material into sanitary sewerage in accordance with § 20.2003.
1§ 20.1301(a)(1).
In granting the license in this case, the NRC interpreted the cap on the total effective dose equivalent (“TEDE”) from the “licensed operation” to limit only the radiation “directly linked to licensed activity.” In re Hydro Res., Inc., 63 N.R.C. 510, 516 (2006). The majority concludes that this interpretation is not “plainly erroneous” because “[t]he 1 clear language of this regulation supports the NRC’s decision to focus only on the licensed operation.” (Majority Op. 687.) This conclusion, however, seems merely to beg the question: the meaning of the phrase “licensed operation” as used in § 20.1301(a)(1).
The NRC’s interpretation of “licensed operation” is inconsistent with the regulation because it renders superfluous the exclusion of “background radiation” and radiation from other specified sources in § 20.1003. It is a well-established principle of statutory and regulatory interpretation that a provision should be read such that no term is rendered nugatory. See Time Warner Ent. Co., L.P. v. Everest Midwest Licensee, L.L.C., 381 F.3d 1039, 1050 (10th Cir.2004) (“As with statutory construction, in interpreting regulations; 6937; 6937, we strive to construe the text so that all of its provisions are given effect and no part is rendered superfluous.”). The NRC interprets “licensed operation” to refer only to the licensee’s activity. However, § 20.1301(a) expressly excludes from the radiation limit on a “licensed operation” any “background radiation,” along with radiation from any “medical administration the individual has received, from exposure to individuals administered radioactive material ..., from voluntary participation in medical research programs, and from the licensee’s disposal of radioactive material into sanitary sewerage.”
By focusing only on the licensee’s activities, the NRC’s interpretation of “licensed operation” renders these specific exclusions unnecessary: There is no reason to expressly exclude radiation from medical research programs if “licensed operation,” by definition, refers only to activity of the licensee. The majority apparently accepts the NRC’s explanation that not every licensee is a mining company and “this language clarifies that the NRC’s regulations specifically addressing sanitary sewers and medical administration of radiation continue to govern those other matters.” (Majority Op. 687.)
The regulation does no such thing. It does not refer to these other sets of regulations or state that they apply notwithstanding § 20.1301(a). Moreover, the NRC itself has admitted the superfluity of the relevant language under its interpretation:
*707 [Sjimply interpreting the phrase ‘from the licensed operation’ as limiting the scope of TEDE arguably renders unnecessary other provisions in the TEDE rule expressly excluding doses resulting from medical administration and disposal of radioactive material in sanitary sewerage.
In re Hydro Res., 63 NRC at 516.
Because the NRC’s asserted interpretation of § 20.1301(a)(1) violates a fundamental rule of construction, and because the NRC granted HRI a license in derogation of its duty to protect public health and safety, I would reject its definition of “licensed operation.”
II
Although the majority does not reach the issue, I would also hold that radioactive emissions from existing mining spoil at Section 17 should not be excluded from the TEDE limit as “background radiation.” Section 20.1301(a) excludes radiation doses due to “background radiation” from the limit on TEDE. The regulations define “background radiation” to include “naturally occurring radioactive material” (“NORM”). § 20.1003. Moreover, neither the Atomic Energy Act nor NRC regulations define NORM. The NRC concluded that NORM includes “technologically enhanced naturally occurring radioactive material” (“TENORM”), or “radioactive materials that, as a result of human activities, are no longer in their natural state,” In re Hydro Res., Inc., 63 N.R.C. 41, 67 (2006), including mining spoil. In re Hydro Res., Inc., 63 N.R.C. at 518 (2006).
The NRC’s interpretation of the regulation is yet again unreasonable. When a term is not defined by the relevant statute or regulation, we interpret it using its “ordinary, contemporary, common meaning.” Perrin v. United States, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (citation omitted). “Naturally” means “according to or by the operation of the laws of nature.” Webster’s 3d New Int'l Dictionary 1507 (1993). Thus, “naturally occurring radioactive material” is radioactive material that occurs according to or by the operation of the laws of nature. It does not include radioactive materials that are no longer in their natural state as a result of human activities.
The NRC asserts that that “technical terms of art should be interpreted by reference to the trade or industry to which they apply.” Although an accurate statement of the law, see La. Pub. Serv. Comm’n v. FCC, 476 U.S. 355, 372, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986), this argument is unavailing. The NRC failed to provide any authority — even one of its own past decisions — indicating that NORM is, in fact, a technical term of art with the meaning it now asserts. In contrast, petitioners cite a number of authorities indicating that TENORM was not understood to be a subset of NORM when the latest version of NRC rules was promulgated in 1991. “Background radiation” does not include radiation caused by existing mining spoil at Section 17 and thus should not be considered radiation from a licensed operation.
III
Because the NRC granted HRI’s license using interpretations of its regulations that are inconsistent with the regulations themselves, I would set aside its decision and remand for the agency to reconsider its licensure of HRI. Petitioners have submitted substantial evidence indicating that the total TEDE at Section 17 already exceeds the 0.1 rem permitted by § 20.1301. Further, they have presented evidence that HRI’s mining will ultimately produce radiation many times the permitted limit. Us *708 ing the correct interpretation of § 20.1301, the NRC would likely revoke HRI’s license.
Families currently live within and just downwind from Section 17. The NRC’s erroneous decision and the majority’s endorsement of that décision will expose these families to levels of radiation beyond those deemed safe by the NRC’s own regulations, jeopardizing their health and safety. Accordingly, I dissent.